FILED

MAR 14 2019

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JESSE LEE SACKETT,<br><br>Petitioner,<br><br>vs.<br><br>LYNN GUYER,<br><br>Respondent. | Cause No. CV 19-04-H-DLC-JTJ<br><br>FINDINGS AND<br>RECOMMENDATIONS OF UNITED<br>STATES MAGISTRATE JUDGE |

This case comes before the Court on state pro se Petitioner Jesse Lee Sackett's application for writ of habeas corpus under 28 U.S.C. § 2254.

As explained below, because Sackett has failed to make the requisite showing to set aside the procedural bars, his petition will be recommended for dismissal with prejudice.

**I. Procedural History**

In 1987, following a conviction in Montana's Fourth Judicial District, Missoula County, for Deliberate Homicide committed with a Dangerous Weapon, Sackett was sentenced to a net 60-year prison sentence with 20 of the years suspended. (Doc. 6 at 2, ¶¶1-3.) Sackett is not challenging his underlying conviction, but rather the unlawful imprisonment and illegal restraint that purportedly occurred when his custody was transferred across state lines under the

1

Interstate Corrections Compact. *Id.* at 3, ¶15(A); 4, ¶15(B).

Apparently, Sackett and other Montana inmates were transferred to the Dickens County Correctional Center, in Spur, Texas, due to overcrowding. (Doc. 1 at 2.) Following this transfer, Sackett was assaulted several times. *Id.* at 2-3. According to Sackett, the United States Federal District Court in Lubbock, Texas, intervened and, because the State had circumvented the Interstate Corrections Compact, ordered the Montana prisoners be released. *Id.* at 4; see also, (Doc. 13 at 1.) Instead, in July of 1997, Sackett and the other prisoners were not released but were transferred back to the Montana State Prison ("MSP") where they continued serving their custodial sentences. *Id.*

Although it is unclear exactly when, Sackett was released on probation. In 2018, Sackett was arrested on a warrant for a purported probation violation and returned to Montana's Fourth Judicial District. See, (Doc. 1 at 1); see also, (Doc. 1-1 at 6.) Sackett's probation was revoked on December 18, 2018; he is currently incarcerated at the Montana State Prison.[1]

Sackett claims that in October of 2018 he attempted to file a habeas petition challenging his purportedly unlawful transfer/restraint in the state district court, but his application was not accepted. (Doc. 6 at 4.) Sackett admits he has not

---

[1] See, Montana Correctional Offender Network Search: https://app.mt.gov/conweb/Offender/24114 (accessed March 12, 2019).

2

attempted to present his claims to the Montana Supreme Court and he believes any such state action in the state courts would be "fruitless." *Id.* at 5-6; see also, (Doc. 1-2 at 3, 5.)

Sackett filed his petition in this Court on December 7, 2018 in which he raised claims concerning both his present incarceration and the conditions of his confinement. (Doc. 1.) Sackett was advised of the legal standards at play in federal habeas proceedings, as well those applicable in 42 U.S.C. §1983 actions. (Doc. 5 at 2-3.) Sackett was directed to file an Amended Petition. *Id.* at 3-4. Sackett filed his Amended Petition on December 26, 2018. (Doc. 6.)

On February 11, 2019, Sackett was informed it appeared his petition was filed more than twenty years too late and that his claims were likely procedurally defaulted because they had not been fairly presented to the Montana Supreme Court. (Doc. 12 at 3-5.) Sackett was ordered to show cause as to why his petition should not be dismissed and was advised of the ways in which he might make the requisite showings. *Id.* Sackett timely responded. (Doc. 13.)

**II. Sackett's Response**

Sackett initially explained he had attempted to exhaust his administrative remedies through the Montana Department of Corrections (DOC), the Governor's Office, and the Montana State Prison (MSP), but that his attempts were either ignored or he was faced with retaliation and destruction of his exhibits and

3

documents. See, (Doc. 1-2 at 3.) Sackett explained that at some unidentified time in the past, he attempted to obtain the purported release order issued by the United States District Court in Lubbock, Texas, but all attempts were unsuccessful and disrupted by MSP officials. *Id.*

In his response to the order to show cause, Sackett explains his actions further. See generally, (Doc. 13.) He states that upon his return to MSP in 1997, he attempted to follow up on the Texas case and was asked by an MSP clerk "if his legal work had got through," as other individuals had had their paperwork seized. *Id.* at 3. Although Sackett does not explain exactly what then occurred, he advises, "[o]bviously no further effort[s] were successful, although attempts were made to contact the U.S. Court in [Texas]." *Id.* Sackett believes his correspondence was seized during the time-period, presumably in 1997 or 1998, and that the same pattern of document seizure reoccurred in recent months when Sackett attempted to contact the Department of Justice. *Id.*

Regarding the untimeliness of his petition, Sackett explains he was threatened by an Associate Warden in 1997 that if he continued to pursue the Texas matter he "would be shipped out of state." *Id.* at 4. According to Sackett, he was then transferred to a facility in Tennessee, where a counselor gave him a memo threatening to discharge his sentence. *Id.* Sackett claims he then "ceased his attempts" but was nonetheless forced to discharge his sentence and begin

4

serving the twenty-year probationary term of his sentence. *Id.* Sackett states he did not realize that probation could be construed as "in custody" for purposes of filing a federal habeas petition. *Id.*

Sackett provides various reasons for his failure to exhaust and the resulting procedural default. He indicates he received no response to the habeas petition he filed in the state district court or to a matter an unidentified clerk purportedly filed on his behalf against the Montana Parole Board.[2] *Id.* at 5. Sackett seems to also assert his parole was wrongfully revoked because he was ill, with ailments including the beginning stages of Alzheimer's and hearing defects, and had been living a law-abiding life in Minnesota for the nine years leading up to the 2018 revocation proceedings. *Id.* Sackett re-asserts his belief that seeking relief in the Montana state courts would be futile. *Id.* at 5-6.

### III. Analysis

A petitioner may escape statutory filing deadlines if he can show he has been pursuing his rights diligently, but an extraordinary circumstance stood in his way and prevented timely filing. See, *Holland v. Florida*, 560 U.S. 631, 649 (2010). The doctrine of equitable tolling is to be applied sparingly. See, *Waldron-Ramsey v. Pacholke*, 556 F. 3d 1008, 1011 (9th Cir. 2009). "The petitioner must show that

---

[2] It appears Sackett may be referring to a pro se Writ of Mandamus filed in 2001. Despite Sackett's assertion to the contrary, the Montana Supreme Court denied Sackett relief. See, *Sackett v. Montana Bd. of Pardons*, No. OP 01-093, Or. (Mont. March 27, 2001).

5

the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." *Porter v. Ollison*, 620 F. 3d 952, 959 (9th Cir. 2010)(citations omitted).

As a preliminary matter, Sackett has failed to show that he acted with the requisite diligence. Sackett acknowledges that upon his return to Montana in July of 1997 he believed his continued incarceration to be unlawful and initially made several inquiries, which included attempts to contact the United States District Court in Texas, in an effort to challenge his custody. Sackett explains his efforts were frustrated by prison officials purportedly interfering with his documents and making threats against him. Sackett alleges he was threatened with a second out-of-state transfer, which apparently happened, and then threatened with the discharge of his sentence.

This Court is not convinced the 1997 Texas "release order" Sackett references actually exists.[3] But, assuming the existence of such an order, Sackett's reasons for failing to raise a challenge sooner are unavailing. In the time period following his return to Montana, Sackett was able to bring a mandamus petition

---

[3] This Court may take judicial notice of orders and filings in other courts when directly related to the case. See, *Tigueros v. Adams*, 658 F. 3d 983, 987 (9th Cir. 2011). The Court has contacted the United States District Court for the Northern District of Texas and has independently searched PACER. Despite these efforts, the Court has been unable to locate any action to which Sackett was a party or a corresponding "release order."

6

before the Montana Supreme Court,[4] as well as file an action in this Court challenging the conditions of his confinement at Montana State Prison. See, *Quigg v. Martz*, No. CV-02-19-H-CSO (D. Mont. filed May 23, 2002).[5] It defies common sense that Sackett would choose to challenge the actions of the Parole Board and the conditions of his confinement, but not challenge the legality of his confinement if Sackett truly believed he should have been released under a 1997 court order. He did not act diligently. *Holland*, 560 U.S. at 649.

Moreover, to the extent Sackett attempts to argue the acts of prison officials constituted an extraordinary act that frustrated his attempt to file in this court, such argument is also unavailing. Because Sackett was, in fact, able to file his federal civil rights action in the relevant time period, he cannot establish that the acts of prison officials prevented him from filing altogether or from filing in a timely manner. *Porter*, 620 F. 3d at 959.

Additionally, Sackett seems to contend that his own misunderstanding that probation could constitute "custody" for purposes of federal habeas challenges should serve to excuse the untimely filing. See, (Doc. 13 at 4.) Although from his filings it is unclear exactly when Sackett was released on probation, the Court

---

[4] See fn. 2, supra.

[5] Sackett was represented by counsel in this matter.

7

believes Sackett was on probation in 2008, if not earlier.[6] But, Sackett's belief as to the legitimacy of a habeas challenge while on probation matters not, because at no time in the decade following Sackett's return to MSP did he attempt to file a habeas action in this Court, despite filing the other two matters referenced above.

To the extent that Sackett seems to argue that his alleged lack of legal sophistication should constitute an "extraordinary circumstance" to warrant equitable tolling of the limitations period, the argument also lacks merit. See, *Waldron-Ramsey*, 556 F. 3d 1008, at 1013 n. 4 ("we have held that a pro se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting equitable tolling"(citation omitted); *Ford v. Piler*, 590 F. 3d 782, 789 (9th Cir. 2009); see also, *Rasberry v. Garcia*, 448 F. 3d 1150, 1154 (9th Cir. 2006) (a petitioner's pro se status, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling). Sackett has failed to demonstrate a basis to excuse his untimely filing.

A procedurally defaulted claim may be excused and subject to federal review if the petitioner can show "cause and prejudice" for the failure to exhaust.[7]

---

[6] See, (Doc. 13 at 5)(wherein Sackett claims prior to his revocation he had been living a law-abiding life in Minnesota for 9 years prior to his 2018 revocation); see also, (Doc. 6-2 at 15)(11/14/18 letter from Courtney Evans, R.N., to Sackett advising that MSP infirmary records are not available because the records only go back 10 years).

[7] A petitioner may also seek to excuse his procedural default by demonstrating actual innocence,

8

*Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986). The "cause and prejudice test" for excusing the failure to raise a claim applies where the claim rests upon a new legal or factual basis that was unavailable at the time of the state court proceedings, or where "interference by officials" may have prevented the claim from being brought earlier. *Carrier*, 477 U.S. at 488.

Sackett fails to demonstrate the requisite cause. It is undisputed the Sackett knew of the factual basis giving rise to his claims in 1997. While he seems to attempt to argue 2018 events, including- the state district court's alleged refusal to act on his state habeas petition, the purportedly unjust revocation of his probation, and, prison officials' interference with this documents- prevented him from presenting his claims, these recent acts did not prevent Sackett from mounting a challenge to the legality of his custody in the years immediately following his 1997 return to MSP. Likewise, to the extent Sackett attempts to argue official interference, such argument is also not persuasive. As discussed above, such interference by MSP officials and others did not prevent him from filing other legal actions in the relevant time-period. Because Sackett has not established cause to excuse the default, the Court need not consider prejudice. *United States v. Frady*, 456 U.S. 152, 168 (1982).

---

see, *Schlup v. Delo*, 513 U.S. 298 (1995), but Sackett has not advanced such a claim. Although may believe that his probation was unjustly revoked in 2018, nowhere does he advance an argument that he is actually innocent of the underlying Deliberate Homicide.

9

Sackett's petition should be dismissed with prejudice; it is time-barred and procedurally defaulted without excuse.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Sackett has not made a substantial showing that he was deprived of a constitutional right. Further, because his petition is both time-barred and procedurally defaulted, reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability should be denied.

Based on the foregoing, the Court makes the following:

## RECOMMENDATION

1. The Amended Petition (Doc. 6) should be DISMISSED with prejudice; it is time-barred and procedurally defaulted.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Sackett may object to this Findings and Recommendation within 14 days.[8] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Sackett must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 14th day of March, 2019.

<i>/s/ John Johnston</i><br>
John Johnston<br>
United States Magistrate Judge

---

[8] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Sackett is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

11